FILED
**November 29, 2024**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Wilkes-Barre

# UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:
**IRENE MULKERIN,**
Debtor.

Chapter 7
Case No. 1:24-bk-02752-HWV

## MOTION TO COMPEL TRUSTEE OF THE TT/PAPOUTSIS FAMILY TRUST TO AUTHORIZE DISTRIBUTIONS TO DEBTOR AND REQUEST FOR RELIEF

**TO THE HONORABLE HENRY W. VAN ECK, UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, the Debtor, Irene Mulkerin, pro se, and respectfully moves this Court for an order compelling the Trustee and Trust Protector and Distribution Advisor of the TT/Papoutsis Family Trust dated December 13, 2012 ("the Trust") to fulfill their fiduciary duties by considering and authorizing reasonable distribution requests made by the Debtor. In support of this Motion, Debtor states as follows:

## BACKGROUND

1. **Filing of Bankruptcy Petition**

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 25, 2024 (Case No. 1:24-bk-02752-HWV).

2. **Upcoming Hearing on Filing Fee Waiver**

A hearing is scheduled for December 3, 2024, at 9:30 a.m., concerning the Debtor's request to waive or defer the $345 filing fee required to file a Chapter 7 bankruptcy, as she lacks the financial resources to pay this fee while providing essential needs for her family.

3. **Debtor's Interest in the Trust**

The Debtor is a beneficiary of the TT/Papoutsis Family Trust dated December 13, 2012. The Trustee is Mr. Don L. Kornfield, the Trust Protector and Distribution Advisor is Mr. Bradley J. Leber, and the Investment Advisor is the Debtor's father, Mr. Andrew V. Papoutsis.

4. **Distribution Requests Denied by the Trust**

a. **October 26, 2024**: The Debtor requested a distribution of $345 to cover the bankruptcy filing fee. This request was denied.

b. **November 4, 2024**: The Debtor requested a distribution of $55,000 to address mortgage arrears, retain a bankruptcy attorney, purchase a vehicle for employment purposes, and provide essential needs for her children. This request was also denied.

5. **Reason for Denial**

In communications dated November 7, 2024, Mr. Bradley J. Leber stated:

"Following up on this matter, I have learned today that bankruptcy counsel has advised the Trustee that any distribution to you would require an order from the Bankruptcy Court approving it, with notice and opportunity for interested parties to object."

Later, when the Debtor inquired about proceeding, Mr. Leber further stated:

"Ms. Mulkerin, I cannot request the order on your behalf, and as I indicated previously, even with an order permitting you to receive a distribution, none will be considered until the settlement of the pending litigation involving the Trust is settled."

Additionally, in an email dated November 22, 2024, Mr. Don L. Kornfield, the Trustee, stated:

2

"The denials were specifically because of the bankruptcy. I am referring your email to [attorney] Bob Chernicoff for further response."

### 6. Alleged Breach of Fiduciary Duty

The Debtor believes that the denial of her distribution requests constitutes retaliation for exercising her legal rights and a breach of the fiduciary duties owed to her as a beneficiary, including the duties of loyalty, impartiality, and reasonable exercise of discretion.

### 7. Impact on Debtor's Bankruptcy Case

The inability to access necessary funds from the Trust significantly impairs the Debtor's ability to fulfill bankruptcy obligations, secure legal representation, and maintain stability for her two young sons. It also prevents her from addressing mortgage arrears to avoid foreclosure and meeting the essential needs of her children.

### 8. Historical Pattern of Denied Distributions

Prior to filing for bankruptcy, the Debtor submitted multiple distribution requests, which were either denied or ignored without reasonable justification. This consistent pattern reflects a reluctance by the Trust's fiduciaries to fulfill their obligations. (See Exhibit C: Historical Trust Distributions Summary.) Moreover, the Debtor alleges breach of fiduciary duty as a central claim in her original complaint filed against Wilmington Trust Company on December 11, 2023, in the Delaware Chancery Court case C.A. 1237-BWD.

## RELIEF REQUESTED

### 9. Authority of the Court

Under 11 U.S.C. § 105(a), the Court has the authority to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code.

### 10. Request to Compel Consideration of Distributions

The Debtor respectfully requests that the Court order the Trustee and Trust Protector of the TT/Papoutsis Family Trust to fulfill their fiduciary duties by

3

promptly and reasonably considering her distribution requests, independent of the ongoing litigation.

### 11. Request for Guidance

Alternatively, the Debtor seeks guidance from the Court on how to proceed in obtaining the necessary funds to meet her bankruptcy obligations and essential living expenses.

### 12. Request for Waiver or Deferral of Filing Fee

In light of the Trust's refusal to provide necessary funds, the Debtor reiterates her request for the Court to waive or defer the $345 filing fee to allow her bankruptcy case to proceed.

## LEGAL BASIS

### 13. Fiduciary Duties Under Trust Law

Trustees and Trust Protectors have a duty to act in good faith, with loyalty and impartiality, and to exercise discretion reasonably and in accordance with the Trust's purposes. Retaliating against a beneficiary for exercising legal rights or withholding distributions without reasonable grounds constitutes a breach of these duties.

### 14. Bankruptcy Court's Equitable Powers

The Bankruptcy Court can address issues where a debtor's ability to comply with bankruptcy obligations is hindered by external parties, especially where those parties owe duties to the debtor.

### 15. Impact on Bankruptcy Estate

The proposed distributions, if authorized, would provide critical funds for the effective administration of the bankruptcy estate. These funds would enable the Debtor to address her obligations and allow the Chapter 7 Trustee, Steven Carr, to fulfill his fiduciary duty to collect, preserve, and maximize the value of the estate's assets, thereby facilitating the orderly progression of the bankruptcy process in

4

accordance with 11 U.S.C. § 704.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that this Court:

A. **Order the Trustee and Trust Protector** of the TT/Papoutsis Family Trust to:

1. Promptly and reasonably consider the Debtor's distribution requests totaling **$55,345.**

2. Refrain from denying distributions based on the existence of litigation involving the Trust or the Debtor's bankruptcy filing.

B. **Grant the Waiver or Deferral** of the $345 bankruptcy filing fee, given the Debtor's financial hardship and the Trust's refusal to provide necessary funds.

C. **Provide such other and further relief** as the Court deems just and proper.

**Respectfully submitted,**

Date: November 29, 2024

**/s/Irene Mulkerin**

**Irene Mulkerin**
Debtor, Pro Se
1740 Adeline Drive
Mechanicsburg, PA 17050
646-812-1923
irene.mulkerin@outlook.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2024, a true and correct copy of the foregoing Motion was served upon the following parties via the Court's Electronic Case Filing (ECF) system and/or email:

- **Steven Carr**, Chapter 7 Trustee
  Emails: carr20@aol.com, stevecarr8@comcast.net

- **Don L. Kornfield**, Trustee of TT/Papoutsis Family Trust
  Email: don@kornfield.net

- **Bradley J. Leber**, Trust Protector and Distribution Advisor
  Email: bleber@mpl-law.com

- **Andrew V. Papoutsis**, Investment Advisor
  Email: apapoutsis@apx-enclosures.com

- **Robert E. Chernicoff, Esq.**
  Email: rec@cclawpc.com

- **Brent C. Diefenderfer, Esq.**
  Email: bdiefenderfer@cgalaw.com

- **Dan Atlas, Esq.**
  Email: datlas@daileyllp.com

**And by first-class mail to:**

- Office of The United States Trustee
  Sylvia H. Rambo United States Courthouse
  1501 N. 6th St., Box 302
  Harrisburg, PA 17102

**Respectfully submitted,**
**/s/ Irene Mulkerin**
Debtor, Pro Se

---

**NOTICE OF MOTION AND OPPORTUNITY TO OBJECT**

**Notice**: In accordance with Local Bankruptcy Rules, any party in interest objecting to the relief sought herein must file a written objection within fourteen (14) days of the date of service of this Motion and must serve a copy of the objection upon the

6

Debtor and all interested parties. If no objections are filed, the Court may grant the relief requested without further notice or hearing.

## EXHIBITS

- **Exhibit A**: Debtor's Income Statement and Proof of Employment (Schedules I and J).

- **Exhibit B**: Correspondence between the Debtor and Trust representatives regarding distribution requests, including emails dated November 7, 2024, and November 22, 2024.

- **Exhibit C**: Historical Trust Distributions Summary.

- **Exhibit D**: Trust Instrument of the TT/Papoutsis Family Trust dated December 13, 2012.

## PRAYER FOR RELIEF

**WHEREFORE**, the Debtor prays that this Honorable Court grant the relief requested herein and any such other and further relief as the Court deems just and equitable.

7

# Exhibit A

**Fill in this information to identify your case:**

Debtor 1 — Irene / Papoutsis / Mulkerin
First Name / Middle Name / Last Name

Debtor 2 (Spouse, if filing) — First Name / Middle Name / Last Name

United States Bankruptcy Court for the: _____ District of _____

Case number (If known)  1:24-bk-02752—HWV

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:
_____
MM / DD / YYYY

Official Form 106I

# Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Describe Employment

1. Fill in your employment information.

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|
| **Employment status** | ☑ Employed ☐ Not employed | ☐ Employed ☑ Not employed |
| **Occupation** | substitute teacher | |
| **Employer's name** | Substitute Teacher Services Inc | |
| **Employer's address** | 2901 Dutton Mill Rd, 2nd Floor / Suite 200 (Number Street) | (Number Street) |
| | Aston  PA  19014 (City State ZIP Code) | (City State ZIP Code) |
| **How long employed there?** | 9 months | 9 months |

## Part 2: Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. $ 1108 | $ 0 |
| 3. | Estimate and list monthly overtime pay. | 3. + $ 0 | + $ 0 |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. $ 1108 | $ 0 |

|  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|
| Copy line 4 here ........................................................................ ➔ 4. | $ _____ 0 | $ _____ 0 |

**5. List all payroll deductions:**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 5a. Tax, Medicare, and Social Security deductions | 5a. | $ _____ | $ _____ 166.50 |
| 5b. Mandatory contributions for retirement plans | 5b. | $ _____ 0 | $ _____ 0 |
| 5c. Voluntary contributions for retirement plans | 5c. | $ _____ 0 | $ _____ 0 |
| 5d. Required repayments of retirement fund loans | 5d. | $ _____ 0 | $ _____ 0 |
| 5e. Insurance | 5e. | $ _____ 0 | $ _____ 0 |
| 5f. Domestic support obligations | 5f. | $ _____ 0 | $ _____ 0 |
| 5g. Union dues | 5g. | $ _____ 0 | $ _____ 0 |
| 5h. Other deductions. Specify: _____ | 5h. | + $ _____ 0 | + $ _____ 0 |
| **6. Add the payroll deductions.** Add lines 5a + 5b + 5c + 5d + 5e +5f + 5g + 5h. | 6. | $ _____ 408 | $ _____ |
| **7. Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ _____ 700 | $ _____ |

**8. List all other income regularly received:**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 8a. Net income from rental property and from operating a business, profession, or farm<br>Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ _____ 0 | $ _____ 0 |
| 8b. Interest and dividends | 8b. | $ _____ 0 | $ _____ 0 |
| 8c. Family support payments that you, a non-filing spouse, or a dependent regularly receive<br>Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ _____ 0 | $ _____ 0 |
| 8d. Unemployment compensation | 8d. | $ _____ 0 | $ _____ 0 |
| 8e. Social Security | 8e. | $ _____ 0 | $ _____ 0 |
| 8f. Other government assistance that you regularly receive<br>Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.<br>Specify: _____ | 8f. | $ _____ 973 | $ _____ 0 |
| 8g. Pension or retirement income | 8g. | $ _____ 0 | $ _____ 0 |
| 8h. Other monthly income. Specify: _____ | 8h. | + $ _____ 0 | + $ _____ 0 |
| **9. Add all other income.** Add lines 8a + 8b + 8c + 8d + 8e + 8f +8g + 8h. | 9. | $ _____ 973 | $ _____ 0 |

**10. Calculate monthly income.** Add line 7 + line 9.
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

| 10. | $ _____ 1673 | + | $ _____ 0 | = | $ _____ 1673 |
|---|---|---|---|---|---|

**11. State all other regular contributions to the expenses that you list in *Schedule J*.**

Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.

Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*

Specify: _____      11. + $ _____ 0

**12.** Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income.
Write that amount on the *Summary of Your Assets and Liabilities and Certain Statistical Information,* if it applies      12. $ _____ 1673

**Combined monthly income**

**13. Do you expect an increase or decrease within the year after you file this form?**

☐ No.

☑ Yes. Explain: Husband will be employed.

| Debtor 1 | Irene | Papoutsis | Mulkerin |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| Debtor 2 | | | |
|---|---|---|---|
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Middle District of Pennsylvania

Case number 1:24-bk-02752—HWV
(if known)

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13
expenses as of the following date:

_____
MM / DD / YYYY

Official Form 106J

# Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Describe Your Household

1. **Is this a joint case?**

   ☑ No. Go to line 2.
   ☐ Yes. Does Debtor 2 live in a separate household?

       ☐ No
       ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household of Debtor 2*.

2. **Do you have dependents?**

   Do not list Debtor 1 and Debtor 2.

   Do not state the dependents' names.

   ☐ No
   ☑ Yes. Fill out this information for each dependent..........................

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| son | 10 | ☐ No ☑ Yes |
| son | 9 | ☐ No ☑ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**

   ☐ No
   ☑ Yes

## Part 2: Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | | Your expenses |
|---|---|---|---|
| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. | $ _____ |
| | If not included in line 4: | | |
| 4a. | Real estate taxes | 4a. | $ _____ |
| 4b. | Property, homeowner's, or renter's insurance | 4b. | $ _____ |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. | $ _____ |
| 4d. | Homeowner's association or condominium dues | 4d. | $ _____ 40 |

**Your expenses**

| | | | |
|---|---|---|---|
| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5. | $_____ |
| 6. | **Utilities:** | | |
| 6a. | Electricity, heat, natural gas | 6a. | $_____ 250 |
| 6b. | Water, sewer, garbage collection | 6b. | $_____ 250 |
| 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. | $_____ 120 |
| 6d. | Other. Specify: _____ | 6d. | $_____ |
| 7. | **Food and housekeeping supplies** | 7. | $_____ 1000 |
| 8. | **Childcare and children's education costs** | 8. | $_____ |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $_____ |
| 10. | **Personal care products and services** | 10. | $_____ |
| 11. | **Medical and dental expenses** | 11. | $_____ 50 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $_____ 200 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $_____ 0 |
| 14. | **Charitable contributions and religious donations** | 14. | $_____ 0 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| 15a. | Life insurance | 15a. | $_____ 150. |
| 15b. | Health insurance | 15b. | $_____ |
| 15c. | Vehicle insurance | 15c. | $_____ |
| 15d. | Other insurance. Specify:_____ | 15d. | $_____ |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: _____ | 16. | $_____ |
| 17. | **Installment or lease payments:** | | |
| 17a. | Car payments for Vehicle 1 | 17a. | $_____ |
| 17b. | Car payments for Vehicle 2 | 17b. | $_____ |
| 17c. | Other. Specify:_____ | 17c. | $_____ |
| 17d. | Other. Specify:_____ | 17d. | $_____ |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5,** *Schedule I, Your Income* (Official Form 106I). | 18. | $_____ 0 |
| 19. | **Other payments you make to support others who do not live with you.** Specify:_____ | 19. | $_____ 0 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.* | | |
| 20a. | Mortgages on other property | 20a. | $_____ 0 |
| 20b. | Real estate taxes | 20b. | $_____ 0 |
| 20c. | Property, homeowner's, or renter's insurance | 20c. | $_____ 0 |
| 20d. | Maintenance, repair, and upkeep expenses | 20d. | $_____ 0 |
| 20e. | Homeowner's association or condominium dues | 20e. | $_____ 0 |

Case 1:24-bk-02752-HWV    Doc 45    Filed 11/29/24    Entered 11/29/24 14:31:50    Desc
Main Document        Page 12 of 43

21. **Other.** Specify: _____    21.   +$ _____

22. **Calculate your monthly expenses.**

     22a. Add lines 4 through 21.      22a.   $ _____ 2060

     22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2    22b.   $ _____

     22c. Add line 22a and 22b. The result is your monthly expenses.      22c.   $ _____ 2060

23. **Calculate your monthly net income.**

     23a. Copy line 12 (*your combined monthly income*) from *Schedule I.*      23a.   $ _____ 1673

     23b. Copy your monthly expenses from line 22c above.      23b.   — $ _____ 2060

     23c. Subtract your monthly expenses from your monthly income.
     The result is your *monthly net income.*      23c.   $ _____ -387

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your
mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☐ No.

☑ Yes.    Explain here:   The above does not reflect my monthly mortgage payments (currently unable to make them) or
                       daily expenses beyond the most necessary items.

Case 1:24-bk-02752   Doc 45   Entered 11/29/24 14:31:50   Desc
Main Document      Page 13 of 43

# EXHIBIT B

**Email Correspondence Relating to Distribution Requests**

**October 26, 2024 | 12:07 PM**
**To: Bradley Leber**
**From: Irene Mulkerin**

Dear Bradley,
I hope this message finds you well. I am writing to request a distribution of $345 from the TT/ Papoutsis Family Trust to cover the filing fee for my Chapter 7 bankruptcy case, No. 1:24-bk-02752.
Please let me know ASAP if there's any additional information you need to process this request.
Thank you for your assistance.
Best regards,
Irene

**November 4, 2024 | 7:30 PM**
**To: Bradley Leber**
**From: Irene Mulkerin**

Dear Mr. Leber,
I hope this message finds you well. I am writing to formally request a distribution of $55,000 from my trust account, TT/Papoutsis Family Trust dated December 13, 2012, to address pre-petition mortgage arrears and bring my account current, a key step in my ongoing bankruptcy case (Case No. 1:24-bk-02752-HWV).

This distribution will allow me to regularize my mortgage payments and support my compliance with all bankruptcy requirements as I work toward a stable financial footing.
Please let me know if any additional information or documentation is needed to facilitate this request. Thank you for your prompt attention to this matter.

Sincerely,
Irene Mulkerin

**November 5, 2024 | 8:11 AM**
**To: Irene Mulkerin**
**From: Bradley J. Leber**

Good morning, Ms. Mulkerin,

I am in receipt of your two recent requests for distributions. My understanding, which the trustee is confirming with counsel, is that no distributions are to be made until the settlement of the pending litigation is completed. If the trustee receives conflicting information from counsel, I will revisit these requests.

Thank you,
Bradley J. Leber, Esquire

November 7, 2024 | 8:50 AM
To: Irene Mulkerin
From: Bradley J. Leber

Good morning, Ms. Mulkerin,

Following up on this matter, I have learned today that bankruptcy counsel has advised the Trustee that any distribution to you would require an order from the Bankruptcy Court approving it, with notice and opportunity for interested parties to object.

**November 7, 2024 | 12:14 PM**
**To: Bradley J. Leber**
**From: Irene Mulkerin**

Dear Mr. Leber,

Thank you for your follow-up regarding my distribution request. I appreciate you informing me about the need for a court order to proceed.

Given the urgency of addressing my mortgage arrears—which is a critical component of my ongoing bankruptcy case (Case No. 1:24-bk-02752-HWV)—I am eager to move forward as quickly as possible. If it's within your capacity, I kindly request that you initiate the process of obtaining the necessary order from the Bankruptcy Court, including providing notice and opportunity for interested parties to object, as advised by bankruptcy counsel.

However, if you are unable to proceed promptly, please let me know, and I will take the necessary steps to file the appropriate motion with the court myself.

Your assistance in this matter is greatly appreciated. Please let me know how you'd like to proceed so we can resolve this issue efficiently.
Thank you again for your time and attention.

Best,
Irene Mulkerin

**November 7, 2024 | 12:27 PM**
**To: Irene Mulkerin**
**From: Bradley J. Leber**

Ms. Mulkerin, I cannot request the order on your behalf, and as I indicated previously, even with an order permitting you to receive a distribution, none will be considered until the settlement of the pending litigation involving the Trust is settled.

Bradley J. Leber, Esquire

**November 22, 2024 | 1:30 PM**
**To: Don Kornfield, Bradley Leber**
**From: Irene Mulkerin**

Dear Mr. Kornfeld and Mr. Leber,

I am writing to object to the denial of my recent requests for trust distributions, which you explicitly stated were withheld due to the ongoing litigation involving the trust. This reasoning raises significant concerns about whether your fiduciary duties are being fulfilled and whether this decision constitutes retaliation against me for exercising my legal rights as a beneficiary.

In your communication on November 7, 2024, Mr. Leber stated, "None [distributions] will be considered until the settlement of the pending litigation involving the Trust is settled." This statement explicitly ties the denial of my distribution requests to the litigation.

As trustee and trust protector, your fiduciary duties require you to act in good faith and in the best interests of all beneficiaries, regardless of legal disputes. Using litigation as a pretext to deny distributions constitutes retaliation and a breach of fiduciary duty.

My distribution requests (dated Oct 26th & Nov 4th) were made to address critical financial needs arising either directly or indirectly from your refusal to provide support, which forced me into bankruptcy. Specifically:
- October 26, 2024: I requested $345 to pay my bankruptcy filing fee.
- November 4, 2024: I requested $55,000 to address pre-petition mortgage arrears and bring my account current.

These requests were reasonable, urgent, and aligned with the trust's purpose of supporting beneficiaries. Refusing to consider them undermines the trust's fundamental purpose.

Sincerely,
Irene Mulkerin

**November 22, 2024 | 3:43 PM**
**To: Irene Mulkerin**
**From: Don Kornfeld**

Irene,

The denials were specifically because of the bankruptcy. I am referring your email to Bob Chernicoff for further response.

Don Kornfield

# Exhibit C

1

**Summary of Distribution Requests and Related Events**

**Introduction**

This exhibit provides a detailed timeline of the distribution requests made by Ms. Irene Mulkerin to the TT/Papoutsis Family Trust and the corresponding responses from the Trust's fiduciaries. It also includes related events that have impacted Ms. Mulkerin's financial situation. This summary illustrates the delays, rejections, and lack of support from the Trust, contributing to her financial hardship and the eventual filing for bankruptcy.

**Timeline of Distribution Requests and Related Events**

**April 13 – May 25, 2023**

- **$272,000 Distribution Request to Johnny Papoutsis (Cousin)**
    - o **Purpose**: Mortgage assistance.
    - o **Start Date**: April 13, 2023
    - o **End Date**: May 25, 2023
    - o **Outcome:**
        - ▪ **Resignation of Johnny Papoutsis**: Cited unwillingness to be involved in family disputes and discomfort with **Mr. Andrew V. Papoutsis's** aggressive behavior, which he has known since childhood.
        - ▪ **Partial Distribution**: Wilmington Trust Company (WTC) agreed to provide **$70,000** on May 25 while a new Distribution Advisor was appointed.
    - o **Waiting Period**: 43 days

2

**July 25 – August 8, 2023**

- **$202,000 Distribution Request to Alex Snyder**
    - **Start Date**: July 25, 2023
    - **End Date**: August 8, 2023
    - **Response**:
        - **Rejected**: Alex Snyder claimed to have resigned.
        - **Clarification**: WTC indicated he remained Trust Protector for a couple of months after his claimed resignation.
    - **Waiting Period**: 15 days

**Around July 30, 2023**

- **New Settlement Proposal by Andrew V. Papoutsis (AVP)**
    - **Details**: Offered a settlement of **$3.75 million** to be paid over **13 years**.

**August 4, 2023**

- **AVP Withdrew Settlement Offer**
    - **Details**: AVP pulled out of the settlement negotiations and terminated discussions.

**August 10, 2023**

- **Legal Action Initiated by Attorney Sean Summers**
    - **Details**:
        - Filed a **writ of summons** on behalf of **APX Enclosures, Inc. et al.**

3

- Defendants: **Irene Mulkerin**, **Andy Mulkerin**, and all associated business interests.
- Included companies where **Andy Mulkerin** holds a 47% ownership stake: **Ventwell, Inc.** and **APX Seetech Systems, Inc.**

---

## August 15 – September 1, 2023

- **$202,000 Distribution Request to McGregor ("Mac") Brillhart**
  - **Start Date**: August 15, 2023
  - **Response Date**: September 1, 2023
  - **Response**:
    - **Rejected** due to "liquidity" concerns.
  - **Waiting Period**: 17 days

---

## August 17, 2023

- **Lawsuits Filed by Traditions Bank**
  - **Details**:
    - Legal action initiated against **Irene and Andy Mulkerin**.
    - Resulted in a **confession of judgment** filed on August 18, 2023, for **$86,020.64** against each defendant.

---

## August 19, 2023

- **Text Message from AVP**
  - **Details**: AVP texted, **"I'll keep throwing lawyers at it until it's over."**

---

4

**September 21 – October 16, 2023**

- **$86,000 Distribution Request to Mac Brillhart**

  o **Start Date**: September 21, 2023

  o **Response Date**: October 16, 2023

  o **Response**:

    ▪ **Rejected**; Mr. Brillhart stated he "wasn't going to respond" without providing additional reasons.

  o **Waiting Period**: 25 days

**September 25 – November 28, 2023**

- **$8,000 Mortgage Assistance Request to Mac Brillhart**

  o **Start Date**: September 25, 2023

  o **End Date**: November 28, 2023

  o **Response**:

    ▪ **Rejected**; no response received from WTC or Mr. Brillhart.

**October 9 – November 28, 2023**

- **$23,000 Distribution Request to Mac Brillhart**

  o **Start Date**: October 9, 2023

  o **End Date**: November 28, 2023

  o **Response**:

    ▪ **Rejected**; no response received from WTC or Mr. Brillhart.

  o **Note**: The amount was needed for a payment due to the Wolfes on October 10 (with a 10-day grace period), as cited by Irene in her request.

5

**November 9, 2023**

- **Bankruptcy Filing by Andy Mulkerin for Businesses**
    - o **Details: Andy Mulkerin** filed for bankruptcy protection for his business entities.

**November 13, 2023**

- **Personal Chapter 7 Bankruptcy Filing by Andy Mulkerin**
    - o **Details: Andy Mulkerin** filed for personal bankruptcy under Chapter 7.

**December 8, 2023**

- **$272,000 Distribution Request to Bradley Leber**
    - o **Start Date**: December 8, 2023
    - o **End Date**: No response received; effectively **rejected**.

**December 11, 2023**

- **Irene Filed Suit No. 1237-BWD in Delaware Chancery Court**
    - o **Details: Irene Mulkerin** initiated legal action in the Delaware Chancery Court.

**March 15 – April 29, 2024**

- **$272,000 Distribution Request to Bradley Leber**
    - o **Start Date**: March 15, 2024
    - o **End Date**: April 29, 2024

6

- o **Response**:
  - ▪ **Withdrawn** after 45 days on advice of counsel.
  - ▪ Reason: Mr. Leber requested more specifics about the intended use of funds.
- o **Waiting Period**: Withdrawn after 45 days

**October 26, 2024**

- **$345 Request for Bankruptcy Filing Fee to Bradley Leber**
  - o **Purpose**: To cover the **Chapter 7 bankruptcy filing fee.**
  - o **Response**:
    - ▪ **Rejected**; Mr. Leber stated that **no distributions would be considered until Irene signed their settlement agreement.**

**November 4, 2024**

- **$55,000 Distribution Request to Bradley Leber**
  - o **Purpose**: To secure funds for a bankruptcy attorney, cover mortgage arrears, and assist with compliance in the bankruptcy process.
  - o **Response**:
    - ▪ **Rejected**; Mr. Leber reiterated that **no distributions would be considered unless Irene accepted the settlement agreement.**

7

# Exhibit D

# DEED OF TRUST

THIS AGREEMENT, made this 13th day of December 2012, between ANDREW V. PAPOUTSIS, of Franklin County, Pennsylvania, hereafter called "Trustor," and WILMINGTON TRUST COMPANY, a Delaware corporation, hereafter called "Trustee,"

WITNESSETH:

WHEREAS, Trustor desires to establish a trust of the property described in the attached "Schedule A" and other property which may be added from time to time, all of which is hereafter called the "trust fund"; and

WHEREAS, Trustee accepts such trust and agrees to administer it in accordance with the terms and conditions of this agreement;

NOW, THEREFORE, Trustor hereby gives Trustee the property described in "Schedule A," in trust, for the following purposes:

## SECTION 1: DISTRIBUTION

A.    <u>Until Death of Trustor</u>. Until Trustor's death, Trustee shall hold the trust fund in further trust, and subject to Subsections F and G of this Section 1, Trustee may, from time to time, distribute to such of Trustor's issue as shall be living from time to time all, some, or none of the net income or principal in such amounts and proportions (whether equally or unequally, and even to the exclusion of one or more beneficiaries) as Trustee, in its sole discretion, deems appropriate, after taking account of all other sources of funds available to them. Trustee shall accumulate any net income not so distributed and add it to principal at least annually, to be disposed of as a part of it. No such distribution shall be deemed to be an advancement, and no such distribution shall be made that would discharge anyone's legal obligation to support any of such issue.

Whenever a contribution is made to the trust, either directly or indirectly, that constitutes a gift for federal gift tax purposes, including the initial contribution, each person among Trustor's issue who is living at the time of the contribution shall have the power, beginning at the time of the contribution, to withdraw property then belonging to the principal of the trust, including the property constituting the contribution, having a value at the time of withdrawal equal to the lesser of the maximum amount allowable as an annual present interest exclusion, per donee, for gift tax purposes under Section 2503(b) of the Code and the value of the contribution at the time of the contribution divided by the number of persons having a power of withdrawal immediately after the contribution.

Trustee shall promptly after each contribution deliver to each person having a power of withdrawal a written notice of the existence of the power. If any person having a power of withdrawal is a minor or is subject to any other legal disability, the notice shall be given to the legal guardian of that person, or, in the absence of a legal guardian, to a parent of a minor or to such other individual as the trustee shall select as an appropriate representative to receive the notice on behalf of that person.

3757572-1

Each person having a power of withdrawal may exercise the power by delivering a written instrument to Trustee prior to the time when the power shall terminate pursuant to the following provisions of this paragraph. If any person having a power of withdrawal is a minor or is subject to any other legal disability, the power may be exercised only by the legal guardian of that person.

Each power of withdrawal shall remain in effect for at least thirty (30) days after the date on which a notice of the power is received by or on behalf of the person holding the power. Subject to the preceding sentence, the powers of withdrawal held by a person shall terminate on the last day of each calendar year in the order in which the powers were created to the extent of the greater of $5,000 or five (5%) percent of the value of the property then belonging to the principal of the trust, or such other amounts as may be defined in Section 2514(e) of the Code, as amended, or its successor provisions.

Notwithstanding the preceding provisions of this paragraph, no withdrawal rights as defined hereunder shall apply to the initial contribution, and any person making a contribution after the initial contribution shall have the right, by a signed instrument delivered to Trustee at the time of the contribution, to exclude any person who would otherwise have a power of withdrawal from having a power to withdraw property in respect of the contribution, or to increase or decrease the amount which any person shall have a power to withdraw in respect of the contribution, provided that the total amount which all persons shall have a power to withdraw in respect of the contribution shall not exceed the amount of the contribution, or to change the period during which any person may exercise a power to withdraw property in respect of the contribution before the power shall terminate.

Any power of withdrawal that is in effect upon Trustor's death shall continue in effect with respect to any trust created under the following provisions of this paragraph as to which the person holding the power is a current beneficiary.

B.  **On Death of Trustor**.  On Trustor's death, Trustee shall divide the assets then held hereunder into shares for Trustor's then living issue, per stirpes, and administer and distribute such shares according to the provisions of Subsection C of this Section 1.

C.  **Shares Held for Issue**.  Trustee shall hold each share set aside for an issue of Trustor in further trust for such issue, referred to hereafter in this Subsection C as the "beneficiary."

1.  **During the Beneficiary's Life**.  During the beneficiary's life and subject to Subsection F and G of this Section 1, Trustee may, from time to time, distribute to the beneficiary and his or her issue all, some, or none of the net income or principal in such amounts and proportions (whether equally or unequally, and even to the exclusion of one or more beneficiaries) as Trustee, in its sole discretion, deems appropriate, after taking account of all other sources of funds available to them. Trustee shall accumulate any net income not so distributed and add it to principal at least annually, to be disposed of as a part of it. No such distribution shall be deemed to be an advancement, and no such distribution shall be made that would discharge the beneficiary's legal obligation to support any of such issue.

2.  **On the Death of the Beneficiary**.  On the death of the beneficiary, Trustee shall distribute so much of the beneficiary's share as is then held hereunder, free from this trust,

Case 1:24-bk-02752-HWV   Doc 45   Filed 11/29/24   Entered 11/29/24 14:31:50   Desc
Main Document      Page 27 of 43

to such of Trustor's issue (other than the beneficiary) and the spouses of such issue (including the beneficiary's spouse), in such manner and amounts, and on such terms, whether in trust or otherwise as is effectively appointed by specific reference hereto in the last written instrument which the beneficiary executes and delivers to Trustee during his or her lifetime or, failing any such instrument, in his or her Will. However, the beneficiary may not appoint any more than an income interest to his or her spouse or to a spouse of any other issue of Trustor. Before the beneficiary exercises this limited power of appointment, he or she should consider Section 2041(a)(3) of the Code and 25 Delaware Code Sections 501-506, as amended, or any corresponding Delaware statute enacted after the date of this agreement.

On the death of the beneficiary, Trustee shall divide the balance of the beneficiary's estate, to the extent not effectively appointed, into further shares for his or her then living issue, per stripes, but if no such issue is then living, then for the then living issue, per stirpes, of the closest ancestor of the beneficiary who was an issue of Trustor and who has then living issue, but if no such issue is then living, then for Trustor's then living issue, per stirpes. Trustee shall hold each share set aside pursuant to the preceding sentence in further trust under the provisions of this Subsection C. Any share set aside for an issue of Trustor for whose benefit a share is then held in trust under the provisions of this subsection C shall be distributed to the Trustee of such share, to be added to its principal and disposed of as part of it.

D.    Perpetuities Savings Clause. Notwithstanding the foregoing provisions, unless sooner terminated in the manner previously provided, each trust held hereunder shall end in its entirety or with respect to certain of its assets on the date, if any, required by the Delaware rule against perpetuities. Thereupon, Trustee shall distribute the principal of such trust or such assets, as the case may be, free from trust, to the beneficiary for whom the trust was set aside.

E.    Failure of Issue. If, at any time, Trustee holds any portion of the principal of the trust fund not disposed of effectively under the previous provisions, then, at such time, Trustee shall distribute such principal, free from trust, to such then living person or persons as are then determined to be Trustor's distributees by the application of the intestacy laws of the State of Delaware governing the distribution of intestate personal property then in effect, as though Trustor had died at that particular time, unmarried, intestate, a resident of the State of Delaware and owning such property then so distributable, or, if no individual person or persons qualify for the distribution pursuant to the Delaware laws of intestacy, to such charitable organization or organizations to which transfers are deductible for federal income, gift, and estate tax purposes and which are exempt from federal income tax as organizations described in section 501(c)(3) of the Internal Revenue Code, and in such shares and such amounts as Trustee shall select.

F.    Distribution Adviser. Trustee shall exercise its discretionary power to distribute income and principal to Trustor's issue pursuant to Subsection A or Subsection C of this Section 1 only on the written direction of the distribution adviser who shall be my nephew, John N. Papoutsis, so long as the distribution adviser is willing and able to act in such capacity. John N. Papoutsis shall have the power at any time to appoint another individual to act as successor distribution adviser, or to change or revoke any appointment before the appointment takes effect, which appointment shall take effect whenever John N. Papoutsis ceases for any reason to act as distribution adviser. In the event John N. Papoutsis fails to appoint his successor as distribution adviser, the distribution adviser shall be an individual appointed by the Trust Protector. Any

Case 1:24-bk-02752-HWV    Doc 45    Filed 11/29/24    Entered 11/29/24 14:31:50    Desc
Main Document      Page 28 of 43

appointment or change or revocation of an appointment shall be made, and any appointment shall be accepted, by a signed instrument.

If at any time there is no distribution adviser, or if such adviser fails to express in writing to Trustee direction as to the exercise of any discretionary power within fifteen (15) calendar days after Trustee has sent a written request for such direction to such adviser's last known address by certified mail (or by any other means for which the sender shall have evidence of receipt by the addressee), Trustee may act in the matter as it deems appropriate.

The distribution adviser shall act in a fiduciary capacity and conform to the purposes of this agreement. Such adviser shall have no duty to inquire into or to see to the performance by Trustee of its duties under this agreement.

The distribution adviser shall receive no compensation and shall not be reimbursed for expenses incurred while acting as such adviser.

G.    Limitation on Distributions. Trustee's discretionary power to distribute income and principal to Trustor's issue pursuant to Subsection A or Subsection C of this Section 1, and subject to the instructions of the distribution adviser pursuant to Subsection F, shall be subject to the following restriction. No distribution of income or principal shall be made to any individual among Trustor's issue unless such individual is actively employed. This restriction shall not apply if (1) the individual has not attained the age of eighteen (18) years, (2) the individual is a full-time student pursing a post-secondary degree, trade degree, or professional degree, (3) the individual is physically or mentally incapable of holding employment, as determined by that individual's attending physician, (4) the individual has attained the age of sixty-five (65) years, (5) the individual is engaged, on a full time basis, in caring for a child who is under the age of five (5) years, or providing nursing services to a member of the family who is dependent on those services, or (6) the individual performs volunteer work for humanitarian endeavors totaling sixteen (16) hours per week on average during any calendar month.

The determination regarding whether a beneficiary meets the standard for distributions set forth in this Paragraph G shall be the sole responsibility of the distribution adviser, and Trustee shall have no responsibility for monitoring or limiting distributions pursuant to this Paragraph G

## SECTION 2: MINORITY OR OTHER INCAPACITY

If any property is otherwise required to be distributed to a beneficiary who has not attained age twenty-five (25) or is, in Trustee's opinion, unable to manage funds due to illness or infirmity, Trustee may:

A.    Distribute such property to such beneficiary himself or herself; or

B.    Apply such property for the benefit of such beneficiary; or

C.    Hold the property not so distributed or applied in a separate trust hereunder for the benefit of such beneficiary and distribute or apply the net income and principal thereof as provided in Subsections A and B hereof.

3757572-1                                              4

Trustee shall distribute the property in such trust to such beneficiary upon his or her attaining age twenty-five (25) or upon the termination of his or her incapacity (as the case may be). If the beneficiary dies prior to such distribution, Trustee shall distribute the property to such beneficiary's estate.

### SECTION 3: MERGER WITH SIMILAR TRUSTS

If, at any time, a trust is set aside for any person or persons under the terms of this agreement which is substantially the same as any other trust established for that person or persons, Trustee may, in its sole discretion, merge the trust created hereunder with the other trust for such person or persons, and the two trusts shall thereafter be held, administered, and distributed as one. However, Trustee shall not combine any trust having an inclusion ratio, as defined in Section 2642 of the Code (hereafter "inclusion ratio"), of other than zero (0) with a trust having an inclusion ratio of zero (0).

### SECTION 4: ALTERNATIVE METHODS OF DISTRIBUTION

Trustee may take any reasonable steps to disburse funds to or for a beneficiary, including: (i) distribution either by hand or mail, to the beneficiary or the guardian of the person or property (whether the guardian is formally appointed or a natural guardian), (ii) distribution to a custodian for the beneficiary under the Uniform Transfers to Minors Act (or similar statute) of any state, (iii) deposit to the account of the beneficiary in any federally insured depository, (iv) direct application for the benefit of the beneficiary, or (v) distribution to a new or existing trust for the beneficiary.

### SECTION 5: SPENDTHRIFT PROVISION

A beneficiary may not alienate or in any other manner assign or transfer his or her interest in any trust hereunder, and no one (including a spouse or former spouse) may attach or otherwise reach any interest of any beneficiary hereunder to satisfy a claim against that beneficiary, whether the claim is legal or equitable in origin. The provisions of this Section shall not limit or otherwise affect any power of appointment conferred upon a beneficiary or the right of a beneficiary to disclaim or release any interest created hereunder.

### SECTION 6: TRUSTEE'S POWERS

In addition to those powers granted by law, Trustees is specifically authorized and empowered, in its sole discretion, but subject to the provisions of Sections 8 and 13:

A. To sell at public or private sale, exchange for like or unlike property, convey, lease for terms longer or shorter than the trust, and otherwise dispose of any or all property held hereunder, for such price and upon such terms and credits as it deems proper.

B. To invest in any kind of property, real, personal, or mixed, regardless of the laws governing investments by fiduciaries without any duty to diversify investments.

C. Unless otherwise directed by the investment adviser named in Section 7 hereof, to execute securities transactions, without necessity of providing written confirmation thereof to such adviser at the time of settlement, and to execute securities transactions through any

Case 1:24-bk-02752-HWV   Doc 45   Filed 11/29/24   Entered 11/29/24 14:31:50   Desc
Main Document     Page 30 of 43

brokerage service, whether discount or full service, including M&T Securities, at its normal rates of compensation, without diminution of compensation otherwise payable to Trustee, even if Wilmington Trust Company is serving as Trustee.

D.     To vote directly or by proxy at any election or stockholders' meeting any shares of stock, including stock of M&T Bank Corporation, even if Wilmington Trust Company is serving as Trustee.

E.     To participate in any plan or proceeding, including any voting trust plan for liquidating, protecting or enforcing any interest in any property, or form reorganizing, consolidating, merging, or adjusting the finances of any corporation issuing any such interest; to accept in lieu thereof any new or substituted stocks, bonds, notes or securities whether of the same or a different kind or class, or with different priorities, rights, or privileges; to pay any assessment or any expense incident thereto; and to do any other act or thing that it deems necessary or advisable in connection therewith.

F.     To deposit, or arrange for the deposit of, securities at Depository Trust Company (DTC) or at any other securities depository or clearing corporation.

G.     To make any division or distribution in cash or in kind or partly in cash and partly in kind; to make reasonable valuations of the property so divided or distributed; and to elect to recognize taxable gain or loss resulting from a distribution. Trustee may consider the income tax basis of the property then available for division or distribution, as well as the circumstances of the beneficiaries, and need not make division or distribution on a pro rata, asset-by-asset basis. Trustee shall not adjust the interest of any beneficiary as a result of any action taken or forborne under the provisions of this Subsection G.

H.     To make loans, against adequate collateral, to the Personal Representative of the estate of any beneficiary and to purchase any property belonging to his or her estate.

I.     To borrow money, extend loans, pledge assets, and provide guarantees for any purpose connected with the protection, preservation, or improvement of the trust estate whenever in its judgment advisable, and as security to pledge any real or personal property forming a part of the trust estate upon such terms and conditions as it may deem advisable.

J.     To bring or defend litigation, participate in arbitration or mediation, compromise or settle any claim in favor of or against any trust hereunder, and to execute all agreements, deeds, and releases necessary or proper in connection therewith. However, Trustee need not institute or defend any suit or proceeding unless its expenses, including counsel fees and costs, are available in the trust fund or are advanced or guaranteed in an amount and in a manner reasonably satisfactory to it. Trustee shall incur no liability to anyone for any action taken or not taken pursuant to the preceding sentence.

K.     To retain attorneys-at-law, accountants, investment counsel, agents, and other advisers and to pay all compensation and other costs associated therewith from the trust without diminution of compensation otherwise payable to Trustee.

Case 1:24-bk-02752-HWV    Doc 45    Filed 11/29/24    Entered 11/29/24 14:31:50    Desc
Main Document      Page 31 of 43

L. To pay the taxes and expenses of maintaining, repairing, improving, and insuring any real property held hereunder.

M. Except as otherwise provided, to determine whether receipts and disbursements, including its commissions, are allocable or chargeable to income or principal.

N. To renounce, in whole or in part, any property or interest in property which may become payable to any trust hereunder (including the renunciation of any proceeds from any pension, profit-sharing, or other employee benefit plan payable to any trust hereunder), except to the extent that the distribution of any such property resulting from such renunciation is fundamentally inconsistent with the provisions of this agreement.

O. To divide any trust hereunder into separate trusts if the purposes for which the trust was created are better served thereby.

P. To take such actions as are necessary to cause gains from the sale or exchange of trust assets (as determined for federal income-tax purposes) to be taxed for federal income tax purposes as part of a distribution of principal to a beneficiary.

Q. To invest in any closely held company, limited liability company, or partnership, or in any successor entity, and to purchase additional interests in any such entity, even though, as a result, such trust is invested largely or entirely in such entity.

R. To settle its accounts judicially or nonjudicially at any time and from time to time and to pay all of its counsel fees and costs associated therewith from the trust without diminution of compensation otherwise payable to Trustee.

## SECTION 7: CLOSELY HELD BUSINESS INTERESTS

Upon Trustor's death, Trustor directs that, to the extent that any closely held business owned by the trust is not operated by or does not employ in a management capacity one or more of Trustor's issue, Trustee shall sell such closely held business as soon as practicable following Trustor's death. It is Trustor's intention that, to the extent possible, any closely held business that is sold as provided in this Section shall be sold intact.

## SECTION 8: INVESTMENT ADVISER

Trustee shall exercise the powers hereinbefore granted to it in Subsections A, B, D, E, I, and Q of Section 6, Section 7 and Section 10 with respect to each trust hereunder only with the written consent or on the written direction of the investment adviser of such trust, provided that: (i) Trustee shall not sell any M&T Bank Corporation stock held by it hereunder unless specifically directed to do so by such adviser; (ii) the purchase, sale, and voting of M&T Bank Corporation stock shall be solely on the direction of the investment adviser; (iii) Trustee shall manage and invest the otherwise uninvested cash in each such trust in its sole discretion; (iv) the investment adviser may at any time, or from time to time, delegate to Trustee the authority to exercise in its sole discretion the power to buy or sell any property (or, having delegated the authority to do so, revoke such authority); and (v) if, at any time during the continuance of any such trust, there shall be no investment adviser of such trust, or if the investment adviser of such trust shall fail to communicate in writing to Trustee his or her consent, disapproval, or direction

Case 1:24-bk-02752-HWV    Doc 45    Filed 11/29/24    Entered 11/29/24 14:31:50    Desc
Main Document      Page 32 of 43

as to the exercise of any of the aforesaid powers for which exercise the consent or direction of such adviser shall be necessary, within twenty (20) days after Trustee shall have sent to such adviser, by certified mail (or by any other means for which the sender shall have evidence of receipt by the addressee) at his or her last known address, a written request for such consent or direction (notwithstanding that trustee shall be under no obligation to request any such direction), then Trustee is hereby authorized and empowered to take such action as it, in its sole discretion, shall deem to be for the best interest of the beneficiaries of such trust.

Until Trustor's death, the investment adviser shall be Trustor.

After Trustor's death, the investment adviser of each trust hereunder shall be Judith M. Papoutsis and Jamie L. Papoutsis, jointly, or the survivor of them, individually.

After the death of the survivor of Judith M. Papoutsis and Jamie L. Papoutsis, and upon the death, resignation or removal of any investment adviser thereafter, the investment adviser of each trust hereunder shall be appointed by the Trust Protector, or, in the event the Trust Protector fails to appoint an investment adviser within thirty (30) days of the death, resignation or removal of an investment adviser, or if no Trust Protector is then acting, by the beneficiary for whom the trust was set aside, provided that he or she has attained age twenty-five (25). Any such appointment shall be made by a signed instrument delivered to Trustee.

Any investment adviser other than Trustor, Judith M. Papoutsis, or Jamie L. Papoutsis may be removed by the Trust Protector by written instrument delivered to the removed investment adviser and Trustee, subject to the appointment of a successor investment adviser.

Initially, Trustee shall exercise such powers on the direction of the investment adviser, but such adviser may, from time to time, determine whether Trustee will exercise such powers with the consent or on the direction of such adviser.

To qualify, any person appointed investment adviser of a trust hereunder, other than the Trustor, shall deliver a written instrument to Trustee indicating acceptance and agreement that all powers conferred upon such adviser will be exercised in a fiduciary capacity for the exclusive interest of the beneficiaries.

The investment adviser need not inquire into Trustee's performance of its duties and shall not be held liable for any loss whatsoever to any trust hereunder, unless it results from actions taken in bad faith. The investment adviser shall serve without compensation but may be reimbursed for out-of-pocket expenses, including investment counsel fees.

## SECTION 9: TRUST PROTECTOR

A.     It is the Trustor's intention that there shall be a Trust Protector for the Trust. The initial Trust Protector shall be Trustor's nephew, John N. Papoutsis. The Trust Protector shall serve in a fiduciary capacity and shall have the following roles, powers and duties:

1.·     to amend the administrative and technical provisions with respect to any trust hereunder at such times as the Trust Protector may deem appropriate for the proper administration of the Trust or for tax purposes.

     2.    to change the situs of any trust created hereunder and to designate the law of any jurisdiction to be the law governing the administration of any trust created by or pursuant to this Agreement.

     3.    to remove and replace Trustee as provided in Section 17 of this Agreement.

     4.    to remove and replace the investment adviser as provided in Section 8 of this Agreement.

    B.    Each Trust Protector acting with respect to any trust hereunder may resign at any time upon thirty (30) days written notice provided to Trustee and adult beneficiaries of the trust then permitted to receive income or principal distributions. The Trust Protector shall have the power to appoint successor Trust Protectors, who shall not be the Trustor nor any person who is related or subordinate to the Trustor or to any beneficiary within the meaning of Section 672(c) of the Code. The appointment of successor Trust Protectors shall become effective immediately upon delivery of written notice to Trustee and adult beneficiaries of the trust then permitted to receive income or principal distributions. If a successor Trust Protector has not been appointed in accordance with the provisions of this Section, a majority of the adult beneficiaries then permitted to receive distributions of income and principal shall designate a successor Trust Protector, who shall not be the Trustor nor any person who is related or subordinate to Trustor or to any beneficiary within the meaning of Section 672(c) of the Code, by delivering written notice to the successor Trust Protector and Trustee and the appointment shall become effective immediately upon delivery of such written notice.

    C.    The Trust Protector shall have no duty to monitor the conduct of Trustee or the Investment Adviser and shall not be liable for any exercise or failure to exercise the powers granted herein. The Trust Protector may receive reasonable compensation and shall be reimbursed for expenses incurred while acting as such.

SECTION 10: <u>RIGHTS AND DUTIES WITH RESPECT TO INSURANCE POLICIES</u>

    A.    <u>All Rights Vested in Trustee</u>. Subject to Section 8, all rights, title and interest in and to, and all rights, powers and privileges accruing under any insurance policies forming a part of the trust estate at any time, and the proceeds thereof, shall be the property of, belong to, and be exercisable by Trustee as sole owner of said policies, including, by way of illustration, without limiting the generality of the foregoing:

     1.    the right to receive or apply dividends or distributive shares or surplus, disability benefits, surrender values, or the proceeds of matured endowments;

     2.    to obtain and receive from the respective insurers such advances and loans on account of such policies as may be available;

     3.    to exercise any option, right or privilege granted in a policy;

     4.    to sell, assign or pledge a policy;

5. to change the beneficiary of a policy, except that no one other than the Trustee may be named as beneficiary of a policy;

6. to convert a policy into other forms of insurance; and

7. any and all other rights, powers and privileges which the owner of such policies may have hereunder, whether or not hereinabove mentioned.

The insurer under each such policy is authorized to make payments to Trustee, to act solely upon the instructions of Trustee, and in every respect to deal solely with Trustee as the absolute owner of said policy, and such insurer shall not be responsible for the proper application or disposition of any funds paid by it to Trustee; and the receipt of Trustee to each insurer shall be effective to release and discharge such insurer for any payment so made, and shall be binding upon every beneficiary of each trust hereby created.

B. **Limited Duties of Trustee**. Before the maturing (by reason of the death of the insured or otherwise) of any insurance policy or annuity contract of which Trustee may at any time be designated as owner, assignee, beneficiary or payee:

1. **No Duty to Pay Premiums**. Trustee shall be under no duty to pay any premium, assessment or other charges necessary to maintain in force any insurance policy, and shall be under no duty either to keep informed with respect to such payments or to take any other action to maintain in force such policies; provided, however, should Trustee be notified that twenty (20) days have elapsed from the due date of a premium on any insurance policy and such premium remains unpaid, then Trustee is hereby directed to borrow money upon any or all of the policies or the trust estate for the purpose of paying such premiums, or should such borrowed money be insufficient to pay such premiums, then Trustee is directed to convert such policies into paid up life insurance, or if such policies cannot be converted to paid up life insurance, then Trustee is directed to surrender such policies or any of them and receive the cash value thereof from the insurers and to use the proceeds of such surrender in the manner herein provided. The Trustor shall not be deemed because of this trust instrument to have entered into any covenant with Trustee for the benefit of any beneficiary, insurer, or any other person or corporation, to pay premiums, dues, assessments, or other charges or any policy forming a part of the trust estate.

2. **No Requirement of Due Diligence Search.** Trustee will have no duty to seek competitive bids on any policy of insurance on the life of the Trustor or any other person, or to evaluate such policies or insurance companies at the time of the acquisition of a policy or at any time thereafter. Trustee may accept without inquiry the recommendation of any insurance agent (a) who has an application for a policy of insurance on the life of any person (including, but not limited to, the Trustor), which is signed by said person as the insured or (b) whom said person represents to be familiar with the insurance needs of said person.

3. **No Duty to Maximize Earnings**. Trustee shall have no duty to maximize the earnings of the trust estate by borrowing the cash value of any life insurance policy or by using less than all cash available to Trustee to pay life insurance premiums. With regard to any cash in excess of the projected premium payments, Trustee may either make additional premium payments on a policy of life insurance or may invest in other assets without liability for such selection.

3757572-1

10

C.     Trustee's Powers and Duties With Respect to Matured Policies.  In addition to the powers, rights and duties conferred by law upon trustees, and in addition to the powers, rights and duties conferred upon Trustee pursuant to the provisions of this Agreement, Trustee is hereby authorized to exercise the following powers and to discharge the following duties with respect to each insurance policy and annuity contract which may at any time be assigned to Trustee or of which Trustee may at any time be designated as beneficiary or payee, such powers to be exercised and such duties to be discharged upon the maturing of any such policy or contract by reason of the death of the insured or otherwise:

1.     to make timely proofs of death and such other proofs as may be necessary to collect the proceeds due by reason of the maturing of such policies and contracts, and to collect all monies due under such policies and contracts or permit the proceeds of any such policy or contract payable to Trustee, or any share or portion of such proceeds to remain with the insurer or issuer of any such annuity under any option available under the terms of such policies or contracts;

2.     to institute and maintain any proceedings at law or in equity to enforce the payment of any such policy or contract, and to do and perform any and all acts and things which may be necessary or proper for the purpose of collecting any sums which may be due and payable pursuant to the terms and provisions of any such policy or contract; provided, however, that Trustee shall not be required to maintain any such litigation unless Trustee shall be indemnified to Trustee's satisfaction against all expenses and liability arising on account of such litigation;

3.     to compromise and adjust claims arising out of any such policy or contract, upon such terms and conditions as Trustee may deem best, and the decisions of Trustee shall be binding and conclusive upon all persons beneficially interested in the trust;

4.     to give receipts to any insurer or issuer of any such annuity for any amounts received by Trustee as the proceeds of any such policy or contract, and such receipt by Trustee shall be a complete discharge from further liability thereunder to such insurer or such issuer of such annuity and such insurer or issuer of such annuity shall not be required to see to the application of any such proceeds received by Trustee;

provided, however, that Trustee shall not be required to reimburse any person interested in any insurance policy on account of the application of any of the proceeds or surrender value of such policy in satisfaction of any indebtedness to which such policy is subject, nor shall said interested person be subrogated to the rights of the creditors in any collateral because of such indebtedness.

SECTION 11:  ADDITIONS TO THE TRUST FUND

With the consent of Trustee, any person may add property to any trust hereunder, and such property shall thereafter be held by Trustee as a part thereof.  However, no property shall be added to a trust if such addition would cause the inclusion ratio of such trust to become other than zero (0).  Instead, such property shall be held as a separate trust with terms identical to those of the trust to which the property would have been added.

Case 1:24-bk-02752-HWV    Doc 45    Filed 11/29/24    Entered 11/29/24 14:31:50    Desc
Main Document      Page 36 of 43

## SECTION 12: TRUST IRREVOCABLE

This trust shall be irrevocable and not subject to amendment by Trustor or any other person except as provided in Section 9. However, if, after the effective date of this agreement, any future requirements imposed by the Code or any regulations promulgated thereunder would cause the intended generation-skipping transfer tax-exempt status of any trust hereunder to be lost because of the failure of such trust to terminate immediately prior to the expiration of the period of the common-law rule against perpetuities or any specified term of years designated by the Code or the regulations promulgated thereunder, or because of any other reason, the Trust Protector shall have the power to amend this agreement in any manner necessary for the sole purpose of complying with the requirements imposed by the Code or the regulations promulgated thereunder so that the intended generation-skipping transfer tax-exempt status of such trust is preserved. The Trust Protector may rely upon the advice of counsel in taking any action pursuant to the authority given to the Trust Protector, and the Trust Protector shall be without liability therefor.

## SECTION 13: GRANTOR TRUST

A.    Substitution of Trust Property.  Trustor expressly reserves the right to substitute other property for property then held by Trustee other than (i) any stock in a controlled corporation (as such term is defined in Section 2036(b) of the Code, or (ii) any life insurance policy, provided that the investment adviser confirms in a writing filed with the Trustee that the property so substituted shall be of equal value to the property so replaced. The right granted in this section is a personal right of Trustor and is not to be considered exercisable in a fiduciary capacity. Trustor has the right to relinquish this power of substitution and my do so by giving Trustee thirty (30) days written notice.

B.    No Tax Reimbursement.  Trustee shall be authorized, in Trustee's sole discretion, to reimburse Trustor for any income taxes payable on income of the trust fund.

## SECTION 14: NON-ACCRUAL OF INCOME

Any statute or rule of law to the contrary notwithstanding, any income accrued or on hand and not actually distributed to a beneficiary upon the termination of his or her interest shall be treated as though it had, in fact, accrued thereafter.

Any income accrued upon shares of stock or interest bearing property when delivered to Trustee shall be treated as though such income had, in fact, accrued after such delivery.

## SECTION 15: THIRD PARTIES NOT OBLIGED TO FOLLOW FUNDS

No person or corporation dealing with Trustee shall be obliged to see to the application of money paid or property deliver to Trustee, to inquire into the propriety of Trustee's exercise of its powers, or to determine the existence of any fact upon which Trustee's power to perform any act hereunder may be conditioned.

Case 1:24-bk-02752-HWV    Doc 45    Filed 11/29/24    Entered 11/29/24 14:31:50    Desc
Main Document      Page 37 of 43

## SECTION 16: TRUSTEE'S COMPENSATION

Unless otherwise agreed in writing by Trustee and the Trust Protector, Trustee shall receive compensation for its services hereunder from time to time in accordance with the current rates then charged by it for trusts of similar size and character. If Trustee renders any extraordinary services, it may receive additional compensation therefor.

## SECTION 17: RESIGNATION AND REMOVAL OF TRUSTEE

Trustee may resign as Trustee of any trust hereunder by written notice delivered to the adult beneficiaries to whom Trustee then may distribute income and principal, and Trustee may be removed by written notice signed by the Trust Protector, or, if no Trust Protector is then acting, a majority of such beneficiaries who have attained age twenty-five (25). In any case, another bank or trust company, which is not related or subordinate to Trustor or such beneficiaries within the meaning of Section 672(c) of the Code, shall be appointed successor Trustee by written notice signed by a majority of such beneficiaries who have attained age twenty-five (25).

Unless objections are filed as provided below, Trustee shall, within ninety (90) days after receipt of either such notice, deliver the assets held in such trust to the successor Trustee. If a successor Trustee is not appointed in the above manner, Trustee may petition the Delaware Court of Chancery to appoint a successor Trustee.

Upon giving notice of resignation or upon receiving notice of removal, Trustee shall deliver a statement of its activities to the date of such notice for which it has not reported to the person or persons to whom Trustee gave notice of resignation and who are authorized to remove Trustee. Such person or persons shall have sixty (60) days from receipt of such statement to file with Trustee any objections to its actions as Trustee. If no such objections are filed, Trustee shall be without any further liability or responsibility to any past, present, or future beneficiaries.

No successor Trustee shall be required to examine the acts of its predecessor Trustee, and each successor Trustee shall have responsibility only with respect to the property actually delivered to it by its predecessor Trustee.

Notwithstanding the foregoing provisions of this Section, Trustee may, but shall not be required to, prepare and file accountings for a trust hereunder with the Delaware Court of Chancery. Further, prior to delivering all the property of a trust hereunder to a successor trustee or to making any partial or complete distribution of the trust estate, Trustee may require an approval of the trust's accounting either by a release and discharge by the beneficiary or beneficiaries of the trust or by the Delaware Court of Chancery. All of Trustee's fees and expenses (including reasonable attorneys' fees) attributable to any accounting or approval shall be paid by the trust.

## SECTION 18: MERGER OF CORPORATE TRUSTEE

Any corporation resulting from any merger, conversion, reorganization, or consolidation to which any corporation acting as Trustee hereunder shall be a party, or any corporation to which shall be transferred all or substantially all of any such corporation's trust business, shall be

Case 1:24-bk-02752-HWV    Doc 45    Filed 11/29/24    Entered 11/29/24 14:31:50    Desc
Main Document    Page 38 of 43

the successor of such corporation as Trustee hereunder, without the execution or filing of any instrument or the performance of any further act and shall have the same powers, authorities, and discretions as though originally named in this agreement; provided, however that in the case of any corporation that is acting as a Trustee hereunder, the provisions of this Section shall apply only if the resulting or transferee corporation is domiciled in the same jurisdiction as the corporation that was acting as Trustee.

### SECTION 19: TRUST SITUS

This agreement creates a Delaware trust, and all matters pertaining to the validity, construction, and application of this agreement; to the administration of the trusts created by it; and to the effectiveness of restraints on alienation of beneficiaries' interests hereunder shall be governed by Delaware law. The Delaware Court of Chancery shall have exclusive jurisdiction over any action brought with respect to any trust hereunder.

### SECTION 20: ADOPTED PERSONS AND PERSONS BORN OUT OF WEDLOCK

For all purposes of this agreement with regard to adopted persons, only a person adopted while under age twenty-one (21) shall be deemed to be a child and an issue of the adopting person and an issue of the ascendants of the adopting person, and furthermore, the children and issue of a person so adopted shall be deemed to be issue of the adopting person and his or her ascendants. A person born out of wedlock shall not be deemed to be a child or an issue of his or her parent or an issue of the ascendants of his or her parent unless such child is acknowledged in writing by such parent.

### SECTION 21: DEEMED INCAPACITY OF TRUSTOR, TRUSTEE, OR ADVISER

An individual Trustor, Trustee, Adviser, or Trust Protector shall be deemed to be incapacitated: (i) during any period that such individual is legally incompetent as determined by a court of competent jurisdiction; (ii) during any period that a conservator or guardian for such individual has been appointed, based upon his or her incapacity; (iii) during any period when two (2) physicians licensed to practice medicine certify in writing to Trustee (if Trustor's capacity is at issue), to Trustor, Trust Protector or if an Adviser (if a Trustee's capacity is at issue), to Trustor, Trust Protector and Trustee (if an Adviser's capacity is at issue), or to Trustor and Trustee (if Trust Protector's capacity is at issue) that in the opinion of such physicians, such individual, as a result of illness, age, or other cause, no longer has the capacity to act prudently or effectively in financial affairs; or (iv) thirty (30) days after Trustee or any trust beneficiary requests such Trustor, Trustee, Trust Protector or Adviser, as applicable to provide a certificate from a physician licensed to practice medicine that, in the opinion of such physician, such individual has the capacity to act prudently or effectively in financial affairs if such Trustor, Trustee, Trust Protector or Adviser, as applicable, fails to provide such certification within such period.

### SECTION 22: DEFINITIONS

A.    "Adviser" means a distribution adviser or an investment adviser.

Case 1:24-bk-02752-HWV    Doc 45    Filed 11/29/24    Entered 11/29/24 14:31:50    Desc
Main Document      Page 39 of 43

B.    "Issue" of a person means all the lineal descendants of that person of all generations.

C.    "Code" means the Internal Revenue Code of 1986, as amended, or any corresponding federal tax statute enacted after the date of this agreement. A reference to a specific section of the Code refers not only to that section but also to any corresponding provision of any federal tax statute enacted after the date of this agreement, as in effect on the date of application.

D.    Use of any gender in this agreement includes the masculine, feminine, and neuter genders as appropriate.  Use of the singular number includes the plural and vice versa unless the context clearly requires otherwise.

E.    In applying any provision of this agreement which refers to a person's issue, "per stirpes," the children of that person are the heads of their respective stocks of issue, whether or not any child is then living.

F.    "Personal Representative" means the executor or administrator of a decedent's estate and shall include all persons serving in such capacity from time to time.

G.    Use of the verb "shall" in this agreement indicates a mandatory direction, and use of the verb "may" indicates authorization to take action.

H.    Captions, headings, and sub-headings, as used herein, are for convenience only and have no legal or dispositive effect.

<u>SIGNATURE PAGE FOLLOWS</u>

3757572-1

15

Witness:

_____

_____ (SEAL)
ANDREW V. PAPOUTSIS, Trustor

Attest:

_____

WILMINGTON TRUST COMPANY

By: _____

# SCHEDULE A

3757572-1

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

**In re:**
**IRENE MULKERIN,**
**Debtor.**
**Case No.:** 1:24-bk-02752-HWV
**Chapter 7**

---

**ORDER GRANTING MOTION TO COMPEL TRUSTEE OF THE TT/PAPOUTSIS FAMILY TRUST TO AUTHORIZE DISTRIBUTIONS TO DEBTOR AND REQUEST FOR RELIEF**

Upon consideration of the **Motion to Compel Trustee of the TT/Papoutsis Family Trust to Authorize Distributions to Debtor and Request for Relief** (the "Motion") filed by the Debtor, Irene Mulkerin, and after notice and an opportunity for hearing, the Court finds that the relief requested in the Motion is warranted and in the best interests of the Debtor's bankruptcy estate and creditors.

IT IS HEREBY ORDERED THAT:

1. The Trustee and Trust Protector of the TT/Papoutsis Family Trust dated December 13, 2012 ("the Trust") shall promptly and reasonably consider the Debtor's distribution requests, including but not limited to the requests totaling $55,345, as outlined in the Motion.

2. The Trustee and Trust Protector of the Trust shall not deny distributions solely on the basis of the ongoing litigation involving the Trust or the Debtor's bankruptcy filing.

3. The Debtor's request for waiver or deferral of the $345 bankruptcy filing fee is granted, allowing the Debtor's bankruptcy case to proceed without further delay.

4. The Court retains jurisdiction to enforce and interpret this Order and to address any further issues arising from the Motion or related matters.

**SO ORDERED.**